## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISON

WILL BRADSHAW,

     *Plaintiff.*

v.

JOSEPH SALVAGGIO;
KELLY KUENSTLER;
CATHERINE RODRIGUEZ;
DONNA CHARLES;
MONICA ALCOCER.

     *Defendants*.

Case No. 5:20-cv-01168

Hon.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, COUNCILOR WILL BRADSHAW, by and through his attorneys, complaining of Defendants, respectfully allege as follows:

## INTRODUCTION

1.    Plaintiff brings this action to protect his constitutional rights as well as defend the integrity of elected members of city council like Plaintiff whose positions have been threatened due to the tyranny of the minority, those who use their official positions to quash political opposition and silence those who speak out against rampant injustice by government officials. Standing alone, the allegations in this complaint may seem arbitrary or insignificant. However, when viewed in the proper

1

context, calculated acts aimed at unjustly suppressing political opposition, combined with the repeated nature of the conspiratorial plot now being used to unconstitutionally remove a ***second*** city council member elected by the residents of Leon Valley, both actions now challenged in courts of law, the unlawful and malicious nature of Defendants' conduct becomes clear. Described herein is the retaliatory conspiracy to remove Plaintiff from his position in response to Plaintiff's protected conduct, his audacity to challenge the status quo and desire to hold wrongdoers in government accountable to those they represent and serve.  As explained further, Plaintiff is not the first target of Defendants' oppressive conduct, and without intervention from this Court, he surely will not be the last.

## JURISDICTION AND VENUE

2.     This is a civil rights action in which the Plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. § 1983, and the First, Fourth and Fourteenth Amendments.

3.     Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

4.     The events that give rise to this lawsuit took place in the City of Leon Valley, County of Bexar, State of Texas.

5.     Venue is appropriate in the Western District of Texas pursuant to 28 U.S.C § 1391(b) since the acts providing the legal basis for this complaint occurred in the City of Leon Valley, County of Bexar, State of Texas.

## PARTIES

6.      Plaintiff, COUNCILOR WILL BRADSHAW, is a duly elected Councilor of the City of Leon Valley, a law-abiding citizen and of the United States and a resident of the City of Leon Valley, County of Bexar, State of Texas.

7.      Defendant JOSEPH SALVAGGIO is the current chief of police of Leon Valley, is slated to be the next acting city manager for the City of Leon Valley, and has demonstrated a practice of disdain and outright disregard for individuals' constitutional rights. Defendant Salvaggio has a history of unlawfully and unconstitutionally using the powers with which he has been entrusted as a law enforcement officer and more specifically as a chief of police, to squash his dissidents, including those whose dissidence is constitutionally protected.

8.      Defendant KELLY KUENSTLER is the current city manager for the City of Leon Valley. Defendant Kuenstler had previously resigned on January 29, 2020 effective May 1, 2020, but then amended her resignation to be effective September 30, 2020. Her resignation and amended resignation were proactive measures taken by her since she is aware there was a strong likelihood she would be fired shortly after the election, assuming the residents of Leon Valley take full advantage at their first opportunity to oust the other defendant Councilors based on the high-level corruption and disdain for the Constitution that they have demonstrated while running the city of Leon Valley. Defendant Kuenstler was going

to be given an outrageously generous severance by her friends on City Council – terms which are unheard of – which demonstrate the breadth of the high-level corruption taking place within the city government. However, once the complained-of plan to ouster Plaintiff from city council came to fruition, she rescinded her resignation on September 15, 2020.

9.      Defendants CATHERINE RODRIGUEZ, DONNA CHARLES, and MONICA ALCOCER are duly elected city councilors for the City of Leon Valley. They have demonstrated a pattern of disdain and disregard for the Constitution and specifically Free Speech and Due Process. They have demonstrated a willingness and ability to use the powers with which they have been entrusted as elected officials, to squash their dissidents, including those whose dissidence is constitutionally protected, most notably Former Councilor Benny Martinez, whom they unlawfully and unconstitutionally ousted and then replaced without affording Mr. Martinez procedural or substantive due process and with blatantly violating the City of Leon Valley's charter in doing so. They are now in the instant action attempting to do the same to Plaintiff Bradshaw also for his constitutionally protected conduct and without affording him due process. When referred to together, Defendants Rodriguez, Charles, and Alcocer will be referred to as "Defendant Councilors."

10.      Defendants complained-of actions were done maliciously, wantonly, sadistically, intentionally, purposely, knowingly, and with deliberate indifference

and gross negligence. Further, the defendants conspired with each other to unconstitutionally ouster Plaintiff from city council as is outlined herein.

11.   Defendants are all being sued both in their individual and official capacities.

## STATEMENT OF FACTS

12.   On July 10, 2020, Defendant Salvaggio sent Defendant Kuenstler a "Harassment Letter" in which he claimed he was the target of unlawful harassment and ethical violations, at the hands of Plaintiff, City Councilmember Will Bradshaw.

13.   This Letter was improperly marked "Confidential and Privileged." Defendants Salvaggio and Kuenstler, with their decades of experience in city government, were both well aware that no such privilege or confidence applied to this document. However, they conspired to label it this way to maintain a lack of transparency and to chill Plaintiff Bradshaw's First Amendment rights by scaring him into believing this document was in fact not permitted to be shared with others, even his own counsel.

14.   On July 21, 2020, during a city council meeting discussing this complaint, the Defendant Councilors voted to add an agenda item to have a discussion and possible action on scheduling a hearing on Salvaggio's complaint to take place on August 4, 2020. According to the rules of conducting a 3.12 hearing, Plaintiff Bradshaw would not be permitted to be represented by counsel or have

counsel present to ask questions or speak on his behalf during this hearing. The rules do not provide for cross examination.

15.   Salvaggio's letter makes his opinion rather clear: Anyone and any group with the audacity to oppose him, can be grouped together with criminals and must be investigated, and criminally charged.

16.   The ethics complaint authored by Defendant Salvaggio not only contains numerous outright lies but is falsely framed as a letter being written with the "hopes of ending abusive behavior" of Plaintiff. In reality, there was no such "abusive behavior" since all such alleged behavior was and is in fact protected by the First Amendment. Further, this document was really just the first step in what has become these Defendants' way of eliminating those on Council who disagree with them.

17.   This can be proven no more clearly than with the example they created in their ouster of duly elected Former Councilor Benny Martinez.

18.   The following pattern, utilized by the Defendants, will become clear:

   i.   An elected official speaks out against them

   ii.   These Defendants have someone fabricate a claim against said person

   iii.   These Defendants ignore the fact that such speech is Constitutionally protected

iv.  The Defendants claim they need to conduct an investigation and a hearing

v.  In reality, the investigation is a sham and the hearing is a "kangaroo court"

vi.  The conclusion is already forgone that the person needs to be removed from public office

vii.  The defendants then quickly swear in a replacement so that even if the ousted person should win a lawsuit and convince a court that his ouster was unlawful, the city then could argue that the only way to remove an elected official., i.e. the newly sworn in replacement, is through an extremely difficult process called *Quo Warranto* – this all but guarantees that even if the defendant were to lose a lawsuit such as this instant lawsuit, they can still keep their loyal friend in office.

19.   Though this conspiracy allegation may seem extreme at first glance, this is exactly what is currently playing out in the courts right now in the case of Benny Martinez. *See Benny Martinez v. City of Leon Valley*, No. 2019 CI 08343, on appeal at *City of Leon Valley v. Benny Martinez*, No. 04-19-00879-CV.

20.   As explained herein, the conduct upon which the retaliatory "harassment letter" was based includes disagreeing with the manner in which an

individual was arrested by the city police, expressing understanding for those who exercise their constitutional rights, and making a personal donation to a criminal defense fund. This conduct is protected by the First Amendment and does not evidence a violation of any of the provisions of the Leon Valley Charter governing the conduct of elected councilmembers.

## THE CURRENT PLAN TO OUST WILL BRADSHAW

21.  As they have demonstrated a willingness to do in the past, the defendants are at it again. This time, Plaintiff Bradshaw is in their unconstitutional crosshairs, based on his constitutionally protected conduct. His only crime: Questioning Salvaggio and speaking out against what Bradshaw has good reason to believe is Salvaggio's unlawful tyranny.

22.  Leading up to the herein described ethics complaint written by Defendant Salvaggio, Bradshaw had been an outspoken critic of Salvaggio and his majority-friendly group on council, including the councilmember Defendants in this action. The Defendants want to rid themselves of Bradshaw, effectively nullifying yet another election, and replace him with someone who won't question their unconstitutional conduct. They therefore conspired to do to him EXACTLY as they did to Martinez, and their sinister plan is now in motion.

23.  But to understand the claims being made in Salvaggio's Ethics Complaint against Mr. Bradshaw, we need to first examine the removal of

Councilmember Benny Martinez from his duly-elected seat on Leon Valley City Council.

## THE UNCONSTITUTIONAL OUSTER OF BENNY MARTINEZ

24.     Benny Martinez faced two main allegations: (1) sexual harassment and (2) ordering city employees to act.

25.     Both of these allegations had no basis in fact or law.

26.     Simply put the sexual harassment claim was never investigated by any outside organization or law enforcement agency, only by an attorney hired by the City Manager – Ryan Henry, and was merely Defendant Rodriguez exaggerating her contacts with Mr. Martinez and fabricating other contacts with him, essentially claiming that he was treating her in a sexually harassing way. Sadly, Ms. Rodriguez would not be the first to abuse the popularity and trial-by-mob mentality that has sadly taken over parts of the "me-too movement."

27.     The alleged unlawful order was this: Martinez emailing city employees that the city "should" be business friendly.

28.     These allegations were and are without any merit or evidentiary support and in fact constitutionally protected, but that did not matter.

29.     These charges were merely a pretext for the Defendants to do what they had previously conspired to do: conduct a sham of a hearing, vote for the forfeiture

of Mr. Martinez's seat on city council, and then quickly swear in someone else – someone who will not question them.

30.   These Defendants did not allow Mr. Martinez to be effectively represented by council at his hearing. Defendants informed Plaintiff that he would not be permitted to have counsel represent him or question his accusers at his hearing.

31.   These Defendants did not follow their own charter which required a 2/3 vote of all members of council, opting instead to rely on a 2 votes to 1 vote final tally, with two members' votes not being cast. They did this by untruthfully pushing through a new Ordinance outlining the hearing procedures. As discussed herein, the nature of the permitted quorum required violates procedural due process.

32.   These Defendants sat as a hearing panel even though they were biased and were in no way impartial.

33.   Mr. Martinez was not given a meaningful opportunity to call witnesses or cross-examine his accusers.

34.   These Defendants did not recuse themselves even though they were so obviously biased in Rodriguez's favor against Martinez.

35.   While the acts performed while sitting as elected officials may not be subject to liability or a lawsuit, the conspiracy leading up to it with a completely unlawful purpose can be. Synonymously, if elected officials were to sell a seat to a

friend for $100,000 and then vote to appoint him, or alternatively if elected officials were to conspire to remove someone from Council because of their race and then vote to remove him, the conspiracy to deprive someone of their constitutional rights is not subject to immunity even if they can claim that their act of voting is protected by immunity.

36.    What these defendants did to Benny Martinez not only demonstrated their disdain and disregard for the Constitution, but they also showed a willingness to violate due process to achieve their improper goal.

37.    Mr. Martinez sued the defendants for their unlawful conduct and to get his seat back.

38.    Martinez's case was originally filed in Bexar County District Court Case Number 2019CI08343 and in the Fourth Court of Appeals Case Number 04-19-00879. The obvious goal of the defendants was to tie it up in litigation until the election, which was originally scheduled for May 2020 but has since been moved to November 2020, which would then completely nullify Mr. Martinez's lawsuit, unlawfully giving the defendants the win since "their guy" will have stayed in office for the duration of Martinez's term.

39.    At one hearing before the District Court, while a TRO was still in effect which effectively prevented Leon Valley City Council from having any meetings until the legality of Martinez's ouster was determined by the Court, the city's lawyer

told the court an outright lie: That a council meeting was already scheduled to approve a process by which the defendants could oust Martinez. Not too shockingly, the city had not even scheduled a meeting to approve a process, let alone a process that would actually pass constitutional muster, before deciding to throw out Mr. Martinez. The Court was thus tricked into lifting the TRO, after which, the City scheduled such a meeting, and Leon Valley threw out Mr. Martinez and quickly swore in a replacement who would not engage in such outrageous and audacious conduct, such as questioning the police chief or insisting that the constitution be followed.

40.    While on appeal, the City argued that the only way for Mr. Martinez to attempt to get his seat back was through a process called a "quo warranto action." The Court found that Mr. Martinez had no standing to challenge his removal because this type of action cannot be initiated by the removed official and can only be brought by the attorney general or district attorney. *See Leon Valley v. Martinez*, No. 04-19-00879-CV, p. 4-8.

41.   With Martinez's unconstitutional ouster now referenced, and Bradshaw's protected conduct explained, the defendants' conspiracy as it relates to Mr. Bradshaw will be easier to follow.

42.    To understand the claims being made in Defendant Salvaggio's Ethics Complaint against Mr. Bradshaw, we need to first examine the arrest of an elderly gentleman named Olen Yarnell.

## THE JUNE 5, 2020 ARREST OF OLEN YARNELL

43.    The arrest of Olen Yarnell was yet another example of Defendants, particularly Salvaggio, abusing their power as police chief and public officials to retaliate against a dissident.

44.    The assault charges leading up to an indictment being sought against Mr. Yarnell are full of lies and exaggerations, as was the evidence relied upon in obtaining an indictment from the Grand Jury, but that is largely irrelevant. What is relevant, is that Defendant Alcocer was the alleged victim of the case, claiming that old Mr. Yarnell assaulted her. The irony of a member of the Defendants' political team claiming that a critic had committed a crime against her cannot be overlooked, because that is a common theme with these Defendants.

45.    The incident allegedly happened in May 2019; the arrest warrant was not obtained until March 2020; and Mr. Yarnell was then arrested immediately after appearing at a City Council meeting and questioning the police, specifically Defendant Salvaggio, in June 2020.

46.    Salvaggio's co-defendant and co-conspirator Defendant Kuenstler then publicly excused their behavior by claiming that although the warrant was months

old, they had not seen Mr. Yarnell and did not want to arrest him during the Covid-19 crisis.

47.   However, this excuse, like so many other statements made by Salvaggio to excuse his unlawful conduct, is not true.

48.   The reality is simple: The police could have mailed Mr. Yarnell a notice that he had a warrant and he could have walked into court and been arraigned.

49.   Salvaggio wanted to arrest Mr. Yarnell because Mr. Yarnell is an outspoken critic of Salvaggio. So Salvaggio waited until Mr. Yarnell publicly spoke out against Salvaggio and then had him arrested, all while claiming he had no choice – Salvaggio absolutely had a choice. Not only could he have mailed Mr. Yarnell a notice of his warrant as described herein, Salvaggio also could have simply advised Mr. Yarnell of his warrant and released him since it was Leon Valley's charges.

50.   However, regardless of WHY Salvaggio arrested Mr. Yarnell at a city council meeting immediately after Mr. Yarnell spoke out against Salvaggio, Plaintiff Bradshaw unquestionably engaged in constitutionally protected conduct. He videoed the arrest, spoke his mind to the police about the arrest, and likened the Leon Valley police officers to those who kneel on people's necks, an obvious reference to the murder of George Floyd, IE that Leon Valley police all too often act like the proverbial "bad apples."

51.   Police body cam footage, which was shown at a city council meeting on July 21, 2020 by Defendant Kuenstler to demonstrate the need to open an investigation into Plaintiff Bradshaw, shows exactly what Bradshaw said, which ironically was immediately after another citizen told the police that what they were doing was "shameful."

52.   Bradshaw's words were, "You guys are disgusting. You disgust me. You're the problems with this country. You're the problems. You're the guys that are kneeling on people's necks. I'm sorry but this is disgusting. This is disgusting." Bradshaw then walks away while stating that it is "disgraceful."

53.   A   link   to   what   took   place   is   available   here http://leonvalleytx.iqm2.com/Citizens/SplitView.aspx?Mode=Video&MeetingID= 1293&Format=Agenda, specifically at the 54-minute mark.

54.   **Bradshaw's speech is unquestionably protected by the First Amendment**. Thus, it cannot possibly form the basis of a 3.12 hearing without necessarily violating the First Amendment.

55.   However, despite the obvious First Amendment protection protecting Bradshaw's conduct, Salvaggio believed he finally had what he needed to ouster another one of his critics, which is what brings us to the main subject of this action: Salvaggio's Ethics Complaint against Mr. Bradshaw.

56.    The Ethics Complaint is nothing more than Salvaggio improperly labeling Plaintiff's protected conduct as "harassment."

57.    Salvaggio's use of terms such as "abusive" and "harassment" don't change the fact that the actual ***words*** of Bradshaw, as outlined in Defendant's letter, are protected by the First Amendment.

58.    Salvaggio's complaint further contains defamatory and slanderous lies about Mr. Bradshaw, yet even those lies don't make out a case of harassment against Mr. Bradshaw.

59.    At the July 21, 2020 city council meeting, Defendant Kuenstler's repeated Bradshaw's words to show the council how badly an investigation was needed, but that too doesn't change the fact that Bradshaw's conduct is protected.

60.    Defendant Kuenstler falsely claiming that she was genuinely trying to do the city a service by attacking Mr. Bradshaw's conduct still does not change the fact that Bradshaw's conduct was and is constitutionally protected.

61.    Defendant Kuenstler's claim that officers acted legitimately and calmly also does not change the fact that Bradshaw's conduct was and is protected.

62.    Defendant Kuenstler's self-proclaimed righteousness and virtue signaling in supposedly seeking this investigation into Bradshaw is also meaningless in light of the fact that regardless of the legality or illegality of Mr. Yarnell's arrest, **Bradshaw's conduct was and is constitutionally protected**.

63.    Following the arrest of Mr. Yarnell, charges were brought against Mr. Bradshaw for alleged violations of the Home Rule Charter, § 3.12. As expected, the charges and summary of the 'investigation' refer solely to Mr. Bradshaw's use of constitutionally protected speech, specifically his conduct in 'addressing and criticizing the officers following the arrest' – a quintessential protection of the first amendment. The charges claim Mr. Bradshaw unlawfully harassed and offended the officers through this conduct and reference to present examples of police misconduct across the nation.

64.    Once more, Defendants are doing anything they can to remove their opposition – here for conduct clearly protected by the First Amendment. As listed in the investigation, the sole basis for Defendants' investigation of Mr. Bradshaw was constitutionally protected conduct.

65.    On September 21, 2020, Defendants set a hearing for October 5, 2020, at 6:00pm to determine whether Defendants can remove Plaintiff from elected office for conduct protected by the First Amendment. If Defendants are successful, they will fill his spot immediately to ensure Mr. Bradshaw will have no redress.

66.    At a recent city council meeting, Defendant Monica Alcocer even said something to the effect of 'we are running out of time' in reference to this hearing corroborating the plot to remove Mr. Bradshaw and silence political opposition as discussed herein.

## THE DISTRUST OF SALVAGGIO

67.   Bradshaw and many others in Leon Valley are concerned about Salvaggio's pattern of unconstitutional conduct. In fact, a group of concerned citizens have created a group called "Change Leon Valley."

68.   Salvaggio has publicly engaged in unlawful arrests and unlawful seizures of those engaged in peaceful constitutional protected protest.

69.   Salvaggio arrested over a dozen people for peacefully protesting and to date all but one have had their charges dismissed[1] – a lawsuit has been filed in federal court, Case Number 5:18-cv-00680.

70.   Also, Salvaggio had a woman arrested for holding a derogatory sign in front of the police station for the alleged crime of disorderly conduct – this frivolous criminal charge was dismissed as well.

71.   Salvaggio was recently in the news yet again showing off his poor judgment when he hired three "bad apples" fired by San Antonio police, one of whom allegedly put her foot on a handcuffed prisoner's neck. https://www.expressnews.com/news/local/article/Three-San-Antonio-police-officers-fired-by-SAPD-15383921.php

---

[1] The last one will be dismissed as soon as the courts re-open, based on the prosecutor's statements to the court. The fact remains that over two years later, none of them were convicted of any crime.

72.   The irony should not be lost that Plaintiff' supposed harassment was likening Leon valley police officers to those who kneel on necks, when in fact Salvaggio literally hired an officer who put her foot on someone's neck.

73.   Needless to say, there is certainly good reason to opine that Salvaggio is in fact acting in a tyrannical fashion and is one of the "bad apples," just like those involved in the execution of George Floyd in Minneapolis. Bradshaw's comparing Salvaggio's officers to those who kneel on necks and stating his outrage at the way Salvaggio's officers engage, was not only well-founded, but more importantly, constitutionally protected.

74.   Protected conduct cannot possibly form the basis to remove an elected official. Allowing such, is not only unconstitutional but outrageously un-American.

75.   Another unconstitutional and retaliatory excuse to attempt to punish Plaintiff now proffered by Defendants: His protected conduct of donating to an individual's defense fund.   Once again, this conduct is protected by the First Amendment and does not evidence an admission of liability on behalf of the city or a payment of damages as a result of the city's liability.

76.   Once more, Defendants have placed an item on the agenda against Plaintiff claiming he publicly admitted liability against the city in violation of 3.09(A). The alleged public admission is not a proper basis to hold a hearing to oust Plaintiff from his elected position as it is in no way an admission of any form of

liability. Plaintiff stated something similar to: "this is why the auditors come here." Auditors are individuals who exercise constitutionally protected conduct to confirm state officials respect the rights secured by the Constitutions of the United States and the State of Texas.  This too, along with Plaintiff's other speech outlined herein, is free speech protected by the First Amendment to the United States Constitution, not an impermissible public admission of liability or a payment of damages as Defendants now claim.

## SALVAGGIO'S HISTORY OF ABUSING HIS POWER

77.   Defendant Salvaggio undoubtedly is entrusted and empowered not only with a badge, but also with the title police chief. In this capacity, and with this title, anyone could get just about anyone else charged with a crime. Salvaggio knows this well and regularly abuses his power by engaging in unethical and false criminal investigations into those who question his authority and actions. Needless to say, the number of such criminal charges which ultimately get dismissed by prosecutors is the most reliable metric by which to establish this point.

78.   By way of example, below is a non-exhaustive list showing just what kind of department Salvaggio is running:

a.   On June 14, 18, and 23 of 2018, Salvaggio ordered the arrest of dozens of First Amendment activists who were peacefully protesting outside of the Leon Valley police station. At one point, Salvaggio even called

a fake press conference so everyone would assemble, only to order that they all be immediately arrested, and their property seized. These people had their property seized, were subject to arrest, and faced criminal charges, including a crime that he created right then and there on the spot: Failure to identify as a witness. To date, every single one of those charges has been dismissed, and all property has been returned, though it took almost two years. A lawsuit is pending.

b.   On Dec 10, 2019, a First Amendment activist stood outside of the Leon Valley police station with a sign that read "Fuck Joe and the Leon Valley Police." Though not the nicest verbiage, it is undoubtedly and without any conceivable disagreement, protected by the First Amendment. Salvaggio had this person arrested for disorderly conduct and seized her sign. To date, any criminal charges that were initiated have been dismissed, or were never initiated, and the sign is still unlawfully in police custody. A lawsuit will be filed.

c.   Josh Stevens, a current candidate for Leon Valley city council, and a member of the political group "Change Leon Valley," which is a known outspoken critic of Salvaggio, made a post on the social media site Nextdoor sometime in the early part of 2018 in which he was protesting the city's altering of the garbage collection by suggesting

21

hyperbolically that they all just go dump their garbage on the city manager's lawn. Salvaggio threatened Stevens with arrest, in a clear effort to chill Stevens' First Amendment rights.

d. That same Josh Stevens was at a Leon Valley city council meeting in January 2020, and Salvaggio ran up behind him and shoved Stevens, and then yelled out "Mr. Stevens! You aren't going to elbow me like that!" Salvaggio is currently "investigating" Mr. Stevens for assault and will likely wait for the right time, as he did with Mr. Yarnell, to arrest Mr. Stevens at a time and place where Salvaggio likely will hope to score political points. There is body-cam footage of this alleged crime, but Salvaggio is refusing to release it due to a "pending criminal investigation" since it apparently takes him six months to investigate misdemeanor assaults that are captured on camera and in front of many witnesses. It is unknown if a lawsuit will be filed, but there would certainly be a basis for one.

e. On June 25, 2019, Salvaggio made a completely nonsensical written request to the Texas Rangers, asking them to conduct a criminal investigation into what he claimed to perceive to be violations of the open meetings act, by Plaintiff Bradshaw, Mayor Chris Riley, former Councilman Benny Martinez (whom the defendants successfully,

though unlawfully, ousted from office) and others who dare to criticize Salvaggio. Salvaggio attempted to control the actions of councilmembers by requesting a criminal investigation into the sending of an email he claimed to violate the Texas Open Meetings Act. Spoiler, it did not. Further, in his official capacity as the Chief of Police, Salvaggio did not even have access to the email, nor did he ever place an information request, get a warrant, or subpoena the document when he referenced it in his request for the Texas Rangers to conduct a criminal investigation. Nobody using any sense at all could possibly believe this was a crime, yet Salvaggio hoped that by signing as a police chief, his letter would be taken seriously. Thankfully, the Rangers, who are presumably by now aware of Salvaggio's reputation, did not. The fact remains that this was yet another abuse of Salvaggio's power to attempt to intimidate his critics into silence, by threatening criminal investigations.

f.  In early 2018, Salvaggio attempted to charge former Councilman Benny Martinez with criminal interference with a police investigation, and the DA flat-out rejected this charge. Yet another example of Salvaggio abusing his badge to silence his critics with faux criminal investigations. It should be noted that Salvaggio then attempted to

claim during Benny Martinez's sham of a 3.12 hearing during at which he was ousted, Salvaggio made it sound as though Martinez committed this crime despite the DA's disagreement.

g.  Throughout July 2020, Salvaggio has been giving not-so-thinly-veiled threats to members of the "Change Leon Valley Project" that they are a bunch of criminals and that they are being investigated for crimes, including the crime of organized crime.

h.  Salvaggio has issued too many trespass warnings to count to those who oppose him, thereby making it a crime for these people to be on city property, including to protest.

i.  On July 2, 2020, a respected and renowned attorney at a local renowned and respected law firm, who was a witness for Benny Martinez during his sham of a 3.12 hearing, was at City Hall. Salvaggio had her removed and had officers follow her around in a blatant attempt to intimidate her from testifying favorably for Mr. Martinez.

## THE ATTEMPTED UNCONSTITUTIONAL OUSTER OF MAYOR RILEY

79.  As has become a pattern by the Defendants, they attempted to overthrow a duly elected Mayor in the past as well.

80.    On March 9, 2020 some of the Defendants, with the guidance and support of Defendants Kuenstler and Salvaggio, attempted to remove a duly elected mayor for fabricated and nonsensical charges.

81.    Defendant Charles brought two baseless charges against the Mayor in a failed attempt to throw her out of office: First that she breached attorney-client privilege by releasing to the public copies of invoices from attorneys; and second that she acted improperly during the hearing at which Martinez had his council seat unconstitutionally forfeited.

82.    The newly formed "Ethics Review Board," one-sided as it was, could not even bring themselves to find the mayor breached any sort of protocol, but did find that she breached the attorney client privilege and reprimanded her publicly.

83.    In what is quite enlightening into the real goal of what was taking place during that sham of a hearing, Defendant Kuenstler opined that anymore could be found by the panel to be ineligible as mayor. Thankfully the city attorney quickly corrected her, thereby quashing what were their likely goal of overthrowing and ousting a duly elected mayor.

84.    Thankfully, the Mayor has not been ousted. But it is important to note that the defendants have not forgotten about her; in fact the Mayor is included in the instant Ethics Complaint and she will likely be the next to have an "investigation" into some fabricated charges against her to again try to overthrow her as the mayor.

## KELLY KUENSTLER'S EXTREMELY GENEROUS SEVERANCE

85.     Defendant Kuenstler resigned, originally to be effective just before the May election. Then she amended her resignation to be effective before the November election. She has only recently – AFTER the plan to oust Bradshaw was put in motion – rescinded her resignation.

86.     Defendant Kuenstler has been given in her severance:

j.   Over $45K dollars in Personal Time paid out

k.   Over $45K dollars in Major Medical Leave paid out

l.   $25K dollars contributed to her ICMA retirement account

87.     Further, Defendant Kuenstler had named as her successor: Defendant Salvaggio. Certainly, Salvaggio would certainly have been given an extremely generous package, in the event he would be terminated immediately after the November election.

88.     This severance is far more generous than it should be within any reason. However, the elected officials have the right to do that. In fact, the city council can approve a million-dollar severance and a million-dollar signing bonus for incoming acting city manager Salvaggio and the city's residents would be stuck with it. But such generosity with the citizens' pocketbook, certainly demonstrates a motive for the Defendants' herein described conspiracy.

26

89.   In one meeting in which these contract changes were reviewed by Council, Plaintiff voiced his concerns about these unusual changes to her the City Manager's contract and left the meeting discouraged over the abuses he witnessed. As a result of his actions, Defendant Alcocer attempted to have Plaintiff removed from his position.

90.   Defendant Alcocer previously attempted to wrongfully remove Plaintiff alleging he had too many unexcused absences. Plaintiff had one excused absence from a planned vacation out of the country and had not violated any attendance related rules.

91.   On another occasion, Defendants Charles and Rodriguez conspired with each other outside of a city council meeting to quash a proposal Will brought to council. Upon information and belief, this conduct was recorded by a concerned neighbor.

## COUNT I
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Procedural and Substantive Due Process)

### *(Plaintiff against all Defendants)*

92.   Plaintiff incorporates herein all the prior allegations.

93.   The requirements of procedural due process apply to the threatened deprivation of liberty and property interests deserving of the federal and state constitutions.

94.   An elected official who is entitled to hold office under state law has a property interest in his office which can be taken only by procedures meeting the requirements of federal constitutional due process.

95.   The hearing process utilized in the ouster of Benny Martinez did not meet constitutional muster, and there remains no process in place to effectuate such a hearing.

96.   Further, Defendants conduct in unlawfully and maliciously attempting to remove Plaintiff from office demonstrates conscience-shocking conduct is violation Fourteenth Amendment's substantive due process protections.

97.   Defendants are not going to conduct even a fake investigation. Even the House democrats did some pretextual investigation into Trump before impeaching him and even the Senate pretended to have a trial before acquitting him! Here Defendants are going to jump straight to a sham hearing in front of their kangaroo court, where the end result has already been demonstrated with Benny Martinez. The outcome to remove Plaintiff has been predetermined. As discussed herein, these procedures create a constitutionally intolerable appearance of partiality that does not provide constitutionally adequate due process.

98.   The procedures are found in part in the Leon Valley Charter described below, Exhibit A, and the Ordinance authorized in the Charter governing procedures for a "council investigation and hearing." Exhibit B.

99.   The procedures in the Ordinance define a majority vote as "an affirmative vote of the majority of council members present and voting during a 3.12 hearing." (Exhibit B, Section 1. A. 3). Thus, the council members who do not have a majority of the votes may remove a councilor from an elected position as long as they schedule the vote on the day an opposing councilperson is absent or unable to attend. (*Id*.). However, a councilperson who is the respondent or complainant at a hearing is prevented from voting, but their presence still counts toward quorum to hold the hearing. (*Id*. at B. 7).

100.   The procedures specifically do not permit public comment unless agreed upon by majority vote of councilmembers not to include the respondent or complainant. The majority can vote to silence the public on the removal of an elected official. (*Id*. at B. 7; C. 5).

101.   The language of the Charter and the Ordinance are in contradiction to whether an actual investigation is required.

102.   The Ordinance prohibits the councilmember subject of the hearing to ask any questions of the accusing witnesses or of their own witnesses. (Exhibit B, Section 1. C. 13).

103.   The Ordinance only requires a quorum of councilmembers present to hold a hearing and only requires 2/3 of those present and permitted to vote. (*Id*. at C. 16. f). Quorum under the ordinance only means 3 council members must be

present. (*Id*. at A. 6). The respondent councilor and the complainant, if also a councilor, count towards quorum but are not permitted to vote. (*Id*. at B. 7).

104. The Leon Valley Charter can be found here http://www.leonvalleytexas.gov/government/city_council/government/docs/Final%20Adoption%20of%20the%202017%20City%20of%20Leon%20Valley%20TX%20Home%20Rule%20Charter.pdf and is attached hereto as Exhibit A and referred to "The Charter". Section 3.08 describes conduct which may result in a councilor forfeiting his/her seat. Section 3.12 describes the hearing process, and the due process supposedly afforded to the councilor being investigated.

105. In Section 3.12(B), no mention is made of the process by which the investigation would be conducted, who participates in the investigation or who pays for it, who may and may not conduct the investigation, how the hearing would be conducted, what evidence may be introduced and by what rules the admission of such evidence is governed, what rules apply to the introduction of testimony including no mention of cross-examination other than City Council's right to ask questions, whether the investigated councilor may be represented by counsel, what evidence the investigated councilor is entitled to receive before the hearing, whether there is someone acting in the prosecutor's role or who would fill that role, and what burden of proof exists.

106. Further, Per Section 3.12(B)10 and Section 3.12(B)11 states that violations of Section 3.08 may be subject to forfeiture by 2/3 vote, whereas Section 3.09 describes the violations that may subject a councilor to sanctions other than forfeiture by a mere majority vote. However, 3.08 is extremely unclear and in fact includes every portion of Section 3.09, which leaves the ordinance unconstitutionally vague and ambiguous.

107.  Specifically, 3.08 lists the bases for "forfeiture" as follows:

108.  Fails to maintain at any time during the term of office any qualification for the office prescribed by this Charter or by law;

109.  Is convicted of a misdemeanor involving moral turpitude, a violation of any state laws regulating conflicts of interest of municipal officers, a felony, or is assessed a deferred adjudication or probation for a felony or any state laws regulating conflicts of interest of municipal officers;

110.  Fails to regularly attend City Council meetings without an approved absence obtained by the Mayor either before or after the absence. There shall be a presumption of failure to regularly attend when three (3) regular meetings are missed during a term year without obtaining an approved absence from the Mayor;

111.  If a member of City Council violates any provision of this section and does not immediately resign, the City Council may conduct an investigation and hearing pursuant to Section 3.12 of this Charter to determine if the office holder is

in violation of this section. The hearing shall be held within sixty (60) days of the City Council, as a body, learning of the alleged violation.

112.   Convictions and meeting attendance are clearly not at issue in the instant ethics complaint. That leaves the only other option, for which Plaintiff may face forfeiture: failing to maintain qualifications.

113.   Qualifications are defined in Section 3.03 as follows:

a.   Be a qualified voter in the City and State at the time of taking office

b.   Have resided continuously in the corporate limits of the City for twelve (12) months immediately preceding the date of the deadline for filing for office for the current election cycle.

c.   **Not be in violation of any provision in this Charter.**

d.   Satisfy any other eligibility requirements prescribed by law for the office for which they are a candidate.

114.   Again, the only possible "qualification" implicated by the instant ethics complaint is "Not be in violation of any provision in this Charter."

115.   Further, Section 3.09 includes many prohibited acts as well, including the following portion, which ironically was a driving force behind the ouster of Benny Martinez: 3.09(C) which prohibits individual councilors from giving orders to city employees.

116. Section 3.12(B)10 mandates that if a councilor violates Section 3.08, including failure to maintain any "qualification," Council "shall" vote on the forfeiture of his/her seat by 2/3 vote. "Qualifications" include not being in violation of any provision of the charter, including for example, Section 3.09(C). So, Council "shall" vote on the forfeiture of a councilor for violating any part of Section 3.08, which includes by reference "qualifications" which includes Section 3.09 in its entirety.

117. Strangely, Section 3.12(B)11 mandates that any violation of Section 3.09 "may" subject a councilor to penalties other than forfeiture by a majority vote.

118. This contradiction cannot be reconciled and does not give fair notice to councilors what penalty they may face if they violate the Charter.

119. The procedures outlined in Exhibit A, the Charter, and Exhibit B, the Ordinance, do not meet constitutional requirements of due process.

120. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages for his mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

## COUNT II
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (First Amendment Violations)

### *(Plaintiff against All Defendants)*

121. Plaintiff incorporates herein all the prior allegations.

33

122.  Plaintiff engaged in constitutionally protected conduct, as is outlined herein, including but not limited to making statements that the arrest of a citizen was 'disgraceful' and stating, 'this is why auditors come here'.

123.  Defendants have conspired to take an adverse action against him, which he reasonably fears includes his imminent "forfeiture."

124.  There is a clear causal connection between Bradshaw's protected conduct and Defendants' adverse action, and in fact the protected conduct explicitly forms the basis of the advisory action, per the ethics complaint.

125.  All the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

126.  As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages for his mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

## COUNT III
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (First Amendment Violations)

### *(Plaintiff against All Defendants)*

127.  Plaintiff incorporates herein all the prior allegations.

128.  Plaintiff engaged in constitutionally protected conduct, as is outlined herein, specifically of making a donation to an individual's defense fund.

129.  Defendants have conspired to take an adverse action against him, which he reasonably fears includes his imminent "forfeiture" of his duly elected councilor position.

130.  There is a clear causal connection between Bradshaw's protected conduct and Defendants' adverse action.

131.  All the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

132.  As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages for his mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

### COUNT IV
### VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Equal Protection)

*(Plaintiff against All defendants)*

133.  Plaintiff incorporates herein all the prior allegations.

134.  Plaintiff is being attacked for his protected conduct as outlined herein.

135.  As an alternative cause of action, if Plaintiff did improperly instruct an employee to do something in violation of the Charter, he has done what other members of counsel have done numerous times in the past, including the defendant councilors.

136.  The defendants have not taken any action against any councilors, except those who disagree with them about things publicly. This includes the Mayor, Benny Martinez, and Plaintiff Bradshaw. It is clear that those who have the audacity to question the defendant or criticize them are subject to a more stringent review of their conduct.

137.  All the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourteenth Amendment to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

138.  As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages for his mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

## COUNT V
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (1983 Conspiracy)

### *(Plaintiff against All defendants)*

139.  Plaintiff incorporates herein all the prior allegations.

140.  The plan, or conspiracy, is not difficult to see. The defendants want to run the city the way they want to, without regard for what is legal or illegal. When someone steps up defiantly or with dissidence, these defendants get together and try to figure out a way to destroy that person, or at least to neutralize the threat such person poises to their stranglehold on the control they so desperately enjoy.

141.  Salvaggio has shown this willingness in Zinter, Case NO. 5:18-CV-0680-FB, in which he unlawfully detained and arrested dozens of people who were exercising their First Amendment rights, charged them maliciously with nonsensical crimes all of which were eventually dismissed, and seized their property without any lawful basis only to return said property years later.

142.  All defendants have shown a willingness to effectively nullify an election by unconstitutionally ousting duly elected officials, as is outlined herein in the matters of Mayor Riley and Former Councilor Martinez.

143.  Based on statements made by the defendants both in public meetings and in documents, make it clear that they are acting in concert to achieve the unlawful goals outlined herein.

144.  As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages for his mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

<u>**COUNT VI**</u>
<u>**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**</u>

**(Abuse of Process)**

*(Plaintiff against All defendants)*

145. Plaintiff incorporates herein all the prior allegations.

146. The tort of abuse of process compensates a plaintiff when process is used against him for a collateral purpose that is not the proper subject of the proceeding.

147. Defendants misused the removal process by utilizing it to remove political opponents without cause from the Leon Valley City Council.

148. This is not purpose lawfully warranted by the removal process.

149. Defendants had an ulterior motive or purpose of quashing political opposition.

150. As a result of Defendants unwarranted investigation and issuance of disciplinary proceedings against Plaintiff without cause, Plaintiff sustained damages.

151. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages for his mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

## COUNT VII
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Malicious Prosecution)

*(Plaintiff against All defendants)*

152.  Plaintiff incorporates herein all the prior allegations.

153. Defendants instituted and initiated disciplinary and removal proceedings against Plaintiff and his position as an elected city councilor of the City of Leon Valley.

154.  Defendants initiated these proceedings against Plaintiff in bad faith, without a proper purpose, out of retaliation for protected conduct, and to silence another political opponent.

155.  These proceedings will end in Plaintiff's favor.

156. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages for his mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

## COUNT VIII
## VIOLATION OF RIGHTS UNDER TEXAS CONSTITUTION Art. I, § 19

### *(Plaintiff against All defendants)*

157.  Plaintiff incorporates herein all the prior allegations.

158.  The requirements of procedural due process apply to the threatened deprivation of liberty and property interests deserving of the federal and state constitutions.

159.  An elected official who is entitled to hold office under state law has a property interest in his office which can be taken only by procedures meeting the requirements of federal constitutional due process.

160.  The hearing process utilized in the ouster of Benny Martinez did not meet constitutional muster, and there remains no process in place to effectuate such a hearing.

161.  As discussed herein, the procedures currently being used to remove Plaintiff from his duly elected position as City Councilor are not only being used in a retaliatory response to conduct protected by the first amendment, the procedures detailed in Defendant Leon Valley's charter do not meet constitutional muster.

162.  As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages for his mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

<u>**COUNT IX**</u>
<u>**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**</u>
<u>**(Municipal Liability)**</u>

<u>***(Plaintiff against All Defendants in their Official Capacity)***</u>

163.  Plaintiff incorporates herein all the prior allegations.

164.  A municipality is liable for constitutional violations caused by its own policies, practices, or customs.

165.  A municipality is also liable for the unlawful acts of final policy makers.

166.  Defendant Salvaggio, in his capacity of Chief of Police of Leon Valley, and Defendant Kuenstler, in her capacity as Leon Valley City Manager, are final policy makers for City of Leon Valley.

167.  Defendant Councilors and the City Council are final policy makers for City of Leon Valley.

168.  Defendants have knowingly brought false charges against Plaintiff out of retaliation for protected first amendment conduct in attempt to remove in from his duly elected position on the Leon Valley City Council.

169. Defendants have knowingly and intentionally designed an unconstitutional removal process that does not meet the standards of due process at the state or federal level.

170.  Upon information and belief, Defendants conduct as described herein was done solely for impermissible reasons including but not limited to financial gain at the residents' expense and an attempt to frustrate the democratic voting process of Leon Valley by unlawfully removing elected officials through discriminatory and unconstitutional methods.

171.  Defendants conduct constitutes and demonstrates an unlawful policy, practice, or custom in violation of 42 U.S.C. § 1983 and was the moving cause behind the herein described constitutional violations.

172. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff was harmed and suffered damages for his mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, Will Bradshaw, demands judgment and pray for the following relief, jointly and severally, against all Defendants:

a. A Declaration from this Court that the process utilized to oust Benny Martinez must not be utilized to oust any other duly elected city councilors;

b. An Order enjoining the Defendants from unconstitutionally "forfeiting" Bradshaw's council seat, as they currently plan on doing;

c. Full and fair compensatory damages in an amount to be determined by a jury;

d. Punitive damages in an amount to be determined by a jury;

e. Reasonable attorney's fees and costs of this action; and

f. Any such other relief as appears just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all triable issues, per Fed. R. Civ. P. 38(b).

//

//

//

Respectfully Submitted,

Dated: October 1, 2020          */s/ Solomon M. Radner*
                                Solomon M. Radner
                                Madeline M. Sinkovich
                                EXCOLO LAW, PLLC
                                Attorneys for Plaintiffs
                                26700 Lahser Road, Suite 401
                                Southfield, MI 48033
                                (248) 291-9712
                                sradner@excololaw.com


                                */s/ Brandon J. Grable*
                                Brandon J. Grable (SBN 24086983)
                                Attorney for Plaintiffs
                                1603 Babcock Rd, Suite 118
                                San Antonio, TX 78229
                                Phone: (210) 963-5297
                                brandon@G2.law

## **VERIFICATION**

I, Will David Bradshaw, declare as follows:

1.      I am the Plaintiff in the present case, a citizen of the United States of America, and a resident of the State of Texas. I am a duly elected Councilor of the City of Leon Valley.

2.      I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint for Declaratory and Injunctive Relief, and if called on to testify I would competently testify as to the matters stated herein.

3.      I have personal knowledge of Joseph Salvaggio, Kelly Kuenstler, Catherine Rodriguez, Donna Charles, and Monica Alcocer, their activities, and their intentions, including those set out in the foregoing Verified Complaint for Declaratory and Injunctive Relief, and if called on to testify I would competently testify as to the matters stated herein.

4.      I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself, my activities, and my intentions are true and correct, as are the factual statements concerning Joseph Salvaggio, Kelly Kuenstler, Catherine Rodriguez, Donna Charles, and Monica Alcocer, their activities, and their intentions. 28 U.S.C. § 1746.

Executed on this 1st day of October 2020.

Signed: _Will D. Bradshaw_
Will David Bradshaw, Plaintiff

## CERTIFICATE OF ACKNOWLEDGEMENT OF NOTARY PUBLIC

STATE OF TEXAS    )
                 )
COUNTY OF _Bexar_  )

The foregoing instrument was acknowledged before
me on this _1ST_ day of _Oct._ , 20 _20_ .

_Antonio Jacobo_
_____, Notary Public
_Bexar_ County, Texas.
Acting in _Bexar_ County, Texas.

ANTONIO JACOBO
Notary Public, State of Texas
Comm. Expires 02-01-2024
Notary ID 126395765